[Crim. No. 3047. Fifth Dist. Feb. 16, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD EUGENE BERTOLDO, Defendant and Appellant.

## COUNSEL

Paul Halvonik, State Public Defender, under appointment by the Court of Appeal, Gary S. Goodpaster, Chief Assistant State Public Defender, Mark L. Christiansen and Michael Lee Pinkerton, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles P. Just, Susan Rankin Bunting and W. Scott Thorpe, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

HOPPER, J.—On the evening of September 1, 1976, Ruben Mendez and Teddy Perez were at Robert Gordon's house in the town of Goshen. While the three youths were outside on the porch, appellant drove up and began talking to Robert. Ruben had seen appellant on two occasions prior to that evening. Although appellant was dating Robert's sister, Sally, at the time, Robert testified that he did not know appellant before September 1. After awhile, Ruben, Teddy and Robert got into Robert's car to go for a drive. Robert was in the driver's seat, Teddy was in the front passenger's seat, and Ruben was in the back seat behind Robert. Robert had asked his sister, Sally, to go riding around with them and they waited in the car for her to come outside.

The youths were about to leave when appellant walked over to the car and tried to force himself inside. Ruben testified that appellant pulled a knife, came toward him in the back seat of the car and stabbed him once in the chest and twice in the stomach. Teddy testified at trial that his head had been forced to the floor when appellant pushed the seat forward so he was unable to see anything. When he was able to lift his head again, he saw Ruben with blood all over his shirt. However, he told Officer Wayne Spencer shortly after the incident happened that appellant grabbed Ruben by the hair and stabbed him twice in the chest with a chrome-colored knife he carried in his right hand.

After the stabbing, appellant told Ruben to get out of the car, and when he did so, appellant hit him in the mouth. Robert got out of the car and tried to restrain appellant. Appellant pushed Robert and went

toward his stomach with the knife. Officer Spencer said that Robert told him on the night of the incident that appellant swung the knife at him and caused a six-inch-long surface wound on his stomach, which the officer saw.

None of the other boys was armed with a knife or any other weapon, and they each testified that they saw Ruben do nothing to provoke appellant into initiating the attack. Although at trial Robert refused to identify appellant as the assailant, at the preliminary examination he identified appellant as the person who attacked Ruben and himself, and he also told Officer Spencer immediately after the assaults that appellant had stabbed them.

Angie Lizarde, the mother of Robert and Sally, testified at trial that she came home on the evening of September 1, 1976, and found the police and an ambulance there and Ruben was lying on the couch. Officer Spencer said that when he talked to Mrs. Lizarde on the evening of the assaults she told him she had received a telephone call from appellant asking if Ruben were still alive. She told the officer that appellant was calling from a telephone booth on the south side of town, but that he hung up when she tried to find out exactly where he was. Although that night Mrs. Lizarde said she positively recognized the voice as that of appellant, at trial she said she did not make the statement and said that she did not think she could recognize appellant's voice.

At trial, without objection or request for limiting instructions, Officer Spencer testified as to prior inconsistent statements made by Robert Gordon, Teddy Perez and Angie Lizarde regarding identification of appellant as the person who had committed the assault.

Appellant contends (1) that he was denied his right to confront witnesses as guaranteed by article I, section 15 of the California Constitution when Officer Spencer was allowed to testify as to prior inconsistent statements, and (2) that he was improperly charged and convicted under Penal Code section 245, subdivision (a) (aggravated assault), rather than under Penal Code section 243 (felony battery) which carries a lesser sentence.

Each of the contentions of appellant fails to pass muster.

■ The record indicates that at the trial there was no objection to the alleged prior inconsistent statements or request for limiting instruc-

tions of any kind in regard to those statements. The general rule is that the admissibility of evidence will not be reviewed on appeal absent a specific and timely objection at trial on the ground sought to be urged on appeal. (*People* v. *Cannady* (1972) 8 Cal.3d 379, 387 [105 Cal.Rptr. 129, 503 P.2d 585]; *People* v. *Peters* (1972) 23 Cal.App.3d 522, 530 [101 Cal.Rptr. 403]; see generally Witkin, Cal. Evidence (2d ed. 1966) § 1285, p. 1188; Witkin, Cal. Criminal Procedure, § 747, p. 721; Evid. Code, § 353.) Appellant relies on the changing law or superseding law exception of *People* v. *DeSantiago* (1969) 71 Cal.2d 18 [76 Cal.Rptr. 809, 453 P.2d 353] (see Witkin, Cal. Evidence (2d ed. 1966) § 1309, p. 1210). ▉ We do not believe that the constitutional amendment to article I, section 15, in the words of *DeSantiago* (at p. 23) ". . . represented such a substantial change in the former rule as to excuse an objection . . . ." In fact, we do not believe that the constitutional amendment made any change at all in the law on confrontation in California. ▉ We seriously doubt that the confrontation issue is properly before us, and we hold that failure to raise the objection or request a limiting instruction below precludes review. ▉ However, since we also believe that the merits do not require extended discussion, in the interest of judicial economy we have decided to address the merits. After consideration of the merits, we conclude, on grounds separate and independent from the procedural point discussed above, that appellant's first contention is to no avail.

At the time of *California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930] there was no confrontation clause as such in the California Constitution. Appellant urges that because article I, section 15 of the California Constitution was adopted by the voters on November 5, 1974, which specifically provided for the right of a defendant to be confronted with witnesses, the court should adopt the reasoning of *People* v. *Green* (1969) 70 Cal.2d 654 [75 Cal.Rptr. 782, 451 P.2d 422], which was overruled in *California* v. *Green, supra,* 399 U.S. 149, and the reasoning of *People* v. *Johnson* (1968) 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111], to hold that prior inconsistent statements cannot be admitted as substantive evidence because the statements violate the defendant's state constitutional right to confront witnesses against him. Thus, appellant asserts his right to confront witnesses on the much-debated independent state grounds doctrine. (See *People* v. *Disbrow* (1976) 16 Cal.3d 101 [127 Cal.Rptr. 360, 545 P.2d 272]; *People* v. *Norman* (1975) 14 Cal.3d 929 [123 Cal.Rptr. 109, 538 P.2d 237]; *People* v. *Brisendine* (1975) 13 Cal.3d 528, 545 [119 Cal.Rptr. 315, 531 P.2d 1099]; *Dept. of Mental Hygiene* v. *Kirchner* (1965) 62 Cal.2d 586 [43 Cal.Rptr. 329, 400 P.2d 321, 20

A.L.R.3d 361]; see also Brennan, *State Constitutions and the Protection of Individual Rights* (1977) 90 Harv.L.Rev. 489; Lipson, *Serrano v. Priest I and II: The Continuing Role of the California Supreme Court in Deciding Questions Arising Under the California Constitution* (1976) 10 U.S.F. L.Rev. 697; Note, *Rediscovering the California Declaration of Rights* (1974) 26 Hastings L.J. 481; Note, *The New Federalism: Toward a Principled Interpretation of the State Constitution* (1977) 29 Stan.L.Rev. 297; cf. the dis. opns. of Justice Clark in *People* v. *Norman, supra,* 14 Cal.3d 929, 940, fn. 1, and *People* v. *Ramey* (1976) 16 Cal.3d 263, 277-281 [127 Cal.Rptr. 629, 545 P.2d 1333]; Barrett, *Anderson and the Judicial Function* (1972) 45 So.Cal.L.Rev. 739; Bice, *Anderson and the Adequate State Ground* (1972) 45 So.Cal.L.Rev. 750.)

In light of the current law as set forth by the California Supreme Court on this subject, we deem it inappropriate for this intermediate appellate court to adopt the reasoning of appellant. Moreover, as stated by Justice Kaus in *People* v. *Browning* (1975) 45 Cal.App.3d 125, 143 [119 Cal.Rptr. 420] (overruled on other grounds in *People* v. *Williams* (1976) 16 Cal.3d 663, 669 [128 Cal.Rptr. 888, 547 P.2d 1000]), there is no reason to think the clause in the California Constitution would be interpreted differently than the United States Supreme Court has interpreted the United States constitutional right of confrontation. The specific confrontation clause was added to the California Constitution in order to restate what had already been in existence in California in the due process clause of the state Constitution. (*People* v. *Contreras* (1976) 57 Cal.App.3d 816, 820 [129 Cal.Rptr. 397].) The California Constitutional Revision Commission treated the new confrontation clause as being identical with the right afforded by the federal Constitution (*id.*). Although a number of California cases have discussed Evidence Code section 1235, both since *California* v. *Green, supra,* and also since the 1974 constitutional amendment, we are unaware of any of them which relied on the California constitutional provision as a ground for denying admission of prior inconsistent statements as substantive evidence as is permitted by Evidence Code section 1235. (See, e.g., *People* v. *Manson* (1977) 71 Cal.App.3d 1, 31 [139 Cal.Rptr. 275], and cases cited.)

██ Appellant further contends that he was improperly convicted under Penal Code section 245, subdivision (a), because that offense was preempted by the enactment of the crime which he calls "felony battery" causing serious bodily injury (Pen. Code, §§ 242, 243). Violation of Penal Code section 243 results in a different potential sentence than does a violation of Penal Code section 245, subdivision (a).

Appellant incorrectly uses the word preemption. ■ Preemption in criminal law occurs when the state occupies a particular field, as opposed to local government. In such a case the state law nullifies any local regulation in that field. (Witkin, Cal. Crimes (1963) § 28 et seq., p. 31 et seq.) ■ Appellant is really asserting the special statute doctrine. As the California Supreme Court said in *People* v. *Ruster* (1976) 16 Cal.3d 690, 694 [129 Cal.Rptr. 153, 548 P.2d 353]: "Prosecution under a general statute is precluded by a special statute when the general statute covers the same matter as, and thus conflicts with, the special statute. (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580]; *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].) However, a special statute does not supplant a general statute unless *all* of the elements of the general statute are included in the special statute. (See *People* v. *Gilbert, supra,* 1 Cal.3d at p. 480; *People* v. *Phillips* (1966) 64 Cal.2d 574, 582 [51 Cal.Rptr. 255, 414 P.2d 353]; *People* v. *Barrowclough* (1974) 39 Cal.App.3d 50, 55 [113 Cal.Rptr. 852].)"

Appellant contends that Penal Code section 245 is a general statute, that the felony battery is a special statute, and, therefore, the special statute applies. We disagree.

Neither statute meets the "special" statute requirements of the *Williamson-Gilbert* doctrine. Depending upon the type of injury or the force involved or the type of weapon, if any, used, and the acts involved, either one of the two statutes is the more specific. We are unable definitely to denominate either as the more specific so as to supplant the other. Therefore, the doctrine is inapplicable (*People* v. *Earnest* (1975) 53 Cal.App.3d 734, 748 [126 Cal.Rptr. 107]).

Appellant further argues that felony battery, the infliction of serious bodily harm upon another, is a specific crime included within assault by force likely to produce great bodily injury. This analysis, however, fails to consider that a felony battery could result *without* the use of such force. While it is true that appellant's act (the stabbing) may be proscribed by both statutes, it does not follow that the district attorney is limited to a felony battery charge, as felony battery is not necessarily encompassed by aggravated assault. Section 245, subdivision (a), specifically addresses the conduct of a defendant by prohibiting an attack upon another person. In contrast, section 243 addresses the result of conduct rather than proscribing specific conduct. Thus, one may conceivably commit a felony battery without committing an aggravated assault. For example, a push that results in a fall and concomitant serious injury may

not be sufficient deadly force to permit successful prosecution under section 245, subdivision (a). However, it is triable as a felony battery. As in this example, when all elements of aggravated assault cannot be proved, the Legislature has provided an alternative avenue of prosecution (*People* v. *Phillips* (1966) 64 Cal.2d 574, 582 [51 Cal.Rptr. 225, 414 P.2d 353]).

Contrary to the contention of appellant, we find no indication that the Legislature intended Penal Code section 243 to supplant, rather than supplement, Penal Code section 245. Which statute is used in a given situation is a proper matter for prosecutorial discretion.

Appellant's reliance on *People* v. *Schueren* (1973) 10 Cal.3d 553 [111 Cal.Rptr. 129, 516 P.2d 833] is to no avail. Penal Code section 243 is not an included offense within Penal Code section 245, subdivision (a). A violation of Penal Code section 243 requires the actual use of force or violence, not just a threat. In addition, the accusatory pleading in this case charges a violation of two counts of Penal Code section 245; one, assault with a deadly weapon (a knife), and the other, assault by any means of force likely to produce great bodily injury—there is no pleading of "serious bodily injury" (see *People* v. *Lathus* (1973) 35 Cal.App.3d 466, 471 [110 Cal.Rptr. 921]).

The judgment is affirmed.

Brown (G. A.), P. J., and Tuttle, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 11, 1978. Mosk, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.