[No. F005410. Fifth Dist. Nov. 13, 1986.]

COUNTY OF MERCED, Plaintiff and Respondent, v.
DAVID LAMBERTO DOMINGUEZ, Defendant and Appellant.

1514

**COUNSEL**

Louis P. Etcheverry and Tracey Felton Resnick for Defendant and Appellant.

Pat Hallford, District Attorney, Robert A. Prentiss, Deputy District Attorney, John K. Van de Kamp, Attorney General, Gary Birkerd and Cynthia G. Besemer, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—David Lamberto Dominguez appeals from a judgment ordering him to reimburse the County of Merced (County) for part of the AFDC-FC payments made to a licensed treatment center (Bear Creek Ranch) for youths for the care, support and maintenance of appellant's minor

son, J., who was committed to the treatment center by the juvenile court upon finding that J. had violated Welfare and Institutions Code[1] section 602 by commission of a burglary. The issue on appeal is whether the reimbursement order was authorized. We hold that it was not.

FACTS

J. was born June 26, 1966. On July 8, 1983, as a result of participation in a burglary, the court found J. to be a person described in section 726, subdivisions (a) and (c), and ordered J. to be continued as a ward of the juvenile court. It was further ordered that the said minor be maintained in the care, custody, and control of the Merced County Probation Department for placement at the Bear Creek Ranch, a licensed community care facility.

On July 17, 1983, appellant applied for public assistance for his son and was granted AFDC-FC (aid to families with dependent children—foster care). The Merced County Probation Department completed a form entitled "Certification of AFDC-FC Requirements." This document indicated that the child was placed pursuant to a "Jurisdictional/Dispositional Order" and not by voluntary placement. The certificate also indicated that placement in a group home was necessary to meet the child's treatment needs and this group home offered the needed treatment services. AFDC-FC payments are authorized by section 11401.

AFDC-FC was paid by County directly to Bear Creek on behalf of J. for July in the amount of $1,145, for August in the amount of $1,484, for September in the amount of $1,484, and for October in the amount of $668.

In May 1984 the County commenced this action seeking reimbursement from appellant of the AFDC-FC payments the County made directly to Bear Creek Ranch. The action sought to enforce appellant's duty to support the minor pursuant to section 11350.[2]

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]Section 11350 provides in pertinent part as follows: "In any case of separation or desertion of a parent or parents from a child or children which results in aid under this chapter being granted to such family, the noncustodial parent or parents shall be obligated to the county for an amount equal to:

"(a) The amount specified in an order for the support and maintenance of such family issued by a court of competent jurisdiction; or in the absence of such court order,

"(b) The amount of aid paid to the family during such period of separation or desertion limited by such parent's reasonable ability to pay during that period in which aid was granted; and

"(c) Such obligation shall be reduced by any amount actually paid by such parent during

Based primarily upon its conclusion that J. was not incarcerated at the Bear Creek Ranch, the court ordered appellant to reimburse the County and determined appellant's reasonable ability to pay (§ 11350, subd. (b)) was $225 per month for the period J. was at the Bear Creek Ranch. Judgment was entered against appellant for $675.

### DISCUSSION

In *In re Jerald C.* (1984) 36 Cal.3d 1 [201 Cal.Rptr. 342, 678 P.2d 917] the county sought direct reimbursement from the parent of a minor pursuant to section 903[3] for the cost to the county of maintaining the minor at juvenile hall and at a boys' ranch, the minor having been made a ward of the juvenile court pursuant to section 602 and placed at the ranch under the authority vested in the court by section 726, subdivisions (a) and (c).

■ The Supreme Court reversed the order of reimbursement. The court first referred to the rule applicable when a person is incarcerated for criminal or dangerous conduct, stating: "To charge the cost of operation of state functions conducted for public benefit to one class of society is arbitrary and violates the basic constitutional guarantee of equal protection of the law. [Citation.]

"In accordance with this fundamental principle, it has been recognized that parents may not be charged for costs when adult children are incarcerated in prison or committed to state hospitals for the dangerous. Nor may adult children be charged for such incarceration or commitment of their parents. The cases have reasoned that when incarceration or commitment is for the protection of society, it is arbitrary to assess relatives for the expense. [Citations.]" (*In re Jerald C., supra,* 36 Cal.3d at p. 6.)

---

such period of separation or desertion for the support and maintenance of such family.

"The district attorney shall take appropriate action pursuant to this section in the superior court of the county which provided aid under this chapter.

"The court may order the defendant to pay the county attorney fees and court costs, based on such defendant's reasonable ability to pay, in any proceeding brought by the county pursuant to this section."

[3]Section 903, as it then read, provided: "The father, mother, spouse, or other person liable for the support of a minor person, the estates of such persons, and the estate of such minor person, shall be liable for the cost of his care, support, and maintenance in any county institution in which he is placed, detained, or committed pursuant to the order of the juvenile court, or for the cost to the county in which the juvenile court making the order is located, of his care, support, and maintenance in any other place in which he is placed, detained, or committed pursuant to the order of the juvenile court. The liability of such persons (in this article called relatives) and estates shall be a joint and several liability."

Since that time the Legislature has rewritten section 903. The amended version is not applicable to this case. (*In re Jerald C., supra,* 36 Cal.3d at p. 5, fn. 3.)

Referring to sections 602[4] and 202,[5] the court advises: "Whatever the basis for other commitments by the juvenile court (see §§ 300, 601), the purposes of the confinement and treatment in commitments pursuant to section 602 include 'the protection of society from the confined person.' [Citation.]

"The basis of commitment under section 602 is criminal conduct." (*In re Jerald C., supra,* 36 Cal.3d at p. 7.)

■ Thus, the trial court erred in making its determination of whether reimbursement may be ordered depend upon whether the confinement is incarceration. For the purposes of this analysis the criterion is not the characterization of the facility or place in which the minor is placed but the purpose of the confinement. "As was true in [*Dept. of Mental Hygiene* v. *Kirchner* (1964) 60 Cal.2d 716 (36 Cal.Rptr. 488, 388 P.2d 720, 20 A.L.R.3d 353)] and [*Department of Mental Hygiene* v. *Hawley* (1963) 59 Cal.2d 247 (28 Cal.Rptr. 718, 379 P.2d 22)], commitment under section 602 is not for the purpose of providing support and maintenance for the committed person but for the purpose of protecting society." (*Id.,* at p. 8.) Regardless of the laxity or harshness of the setting of the placement of the minor, the county may not recover the costs if confinement is imposed for the protection of society and the minor and for his rehabilitation.

While the Bear Creek Ranch is not a secure facility and does not accept teenagers who are classified as security risks, the facilities are nevertheless for the purpose of detention and protection of society. Minors are not free to leave such facilities without permission; if they do leave without permission they may be housed in a secure facility following their apprehension, pending a detention hearing pursuant to section 632. (§ 636.2.)[6]

---

[4]Section 602 provides: "Any person who is under the age of 18 years *when he violates any law of this state* or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court." (Italics added.)

[5]*In re Jerald C., supra,* 36 Cal.3d at page 7, quotes from the statute as amended in 1976 and 1977. Section 202 at the time of trial in the instant case provided in relevant part: "(a) The purpose of this chapter is to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court and to preserve and strengthen the minor's family ties whenever possible, . . .

"(b) . . . Such guidance may include punishment that is consistent with the rehabilitative objectives of this chapter. Juvenile courts and other public agencies charged with enforcing, interpreting and administering the Juvenile Court Law shall consider the safety and protection of the public and the best interest of the minor in all deliberations pursuant to this chapter."

[6]Indeed section 636.2 provides for nonsecure detention facilities, and states in relevant part: "The probation officer may operate and maintain nonsecure detention facilities, or may contract with public or private agencies offering such services, for those minors who are

We conclude the trial court erred in its conclusion that appellant had the obligation to reimburse the County because the minor was not incarcerated at the Bear Creek Ranch.

In *In re Jerald C., supra,* 36 Cal.3d 1, the county proceeded by seeking reimbursement for payments the county had made under section 903 (see fn. 3, *ante*). In the instant case the complaint proceeds by way of seeking enforcement of appellant's duty to support under section 11350 (see fn. 2, *ante*).

Section 202, subdivision (c),[7] expressly states the existence of the duty of parents to support their child during any period in which the minor may be declared a ward of the court and removed from the custody of the parent, and section 11350 authorizes an action by the county seeking to enforce the duty to support. In *City and County of San Francisco* v. *Thompson* (1985) 172 Cal.App.3d 652 [218 Cal.Rptr. 445] the court upheld an action pursuant to section 11350 seeking county reimbursement. In that case the minor was not under placement in a juvenile facility.

Section 11462[8] establishes rates of payment under the AFDC-FC program based upon actual "allowable costs," which include some overhead and administrative costs. Section 11350 makes no distinction between costs for support and maintenance of a child and those incurred for confinement, treatment or supervision imposed for the protection of society and the minor and his or her rehabilitation. The bills submitted to the County by Bear Creek Ranch were not itemized and were paid in full by the County. The provisions of section 11350 do not expressly authorize a court to break down the support between that allocated to food, clothing and medical expenses as distinguished from costs of incarceration, treatment or super-

---

not considered escape risks and are not considered a danger to themselves or to the person or property of another. . . . A minor detained in such facilities who leaves the same without permission may be housed in a secure facility following his apprehension, pending a detention hearing pursuant to Section 632."

[7]Former section 202, subdivision (c) and present section 202, subdivision (c), effective January 1, 1985, both state that: "It is also the purpose of this chapter to reaffirm that the duty of a parent to support and maintain a minor child continues, subject to the financial ability of the parent to pay, during any period in which the minor may be declared a ward of the court and removed from the custody of the parent."

[8]Section 11462 provides for the establishment of a rate of payment under the AFDC-FC program based on actual "allowable costs." The term "allowable costs" means: ". . . (A) the reasonable cost of, and the cost of providing food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation; (B) reasonable cost of administration and operation necessary to provide the items described in paragraph (A); and (C) reasonable activities performed by social workers employed by group home providers which are not otherwise allowable as daily supervision or as the costs of administration." (§ 11462, subd. (b)(1).)

vision for the protection of society and the rehabilitation of the minor; in any event, there was no evidence presented and the court did not make such a determination in this case.[9]

■ For the reasons stated in *In re Jerald C., supra,* 36 Cal.3d 1, to permit the County to obtain reimbursement from a parent for the costs associated with the treatment or supervision of a minor for the protection of society and the minor and for the rehabilitation of the minor would tread upon the parents' equal protection rights. The substance of the rights sought to be enforced by the County herein is indistinguishable from that sought to be enforced in *In re Jerald C.,* and the rationale of that case should apply in this situation with equal force.

The judgment is reversed.

Costs to appellant.

Best, J., and Azevedo, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied February 4, 1987.

---

[9]The amended version of section 903 authorized the trial court to make such a breakdown. This amended section does not govern this case. (*In re Jerald C., supra,* 36 Cal.3d at p. 5, fn. 3.)

*Assigned by the Chairperson of the Judicial Council.